1  DOUGLAS E. KIRKMAN (State Bar # 53892)
   Email: dkirkman@wkblaw.com
2  WAGNER KIRKMAN BLAINE
   KLOMPARENS & YOUMANS LLP
3  10640 Mather Blvd., Suite 200
   Mather, California  95655
4  Telephone:    (916) 920-5286
   Facsimile:    (916) 920-8608
5

6  CATHERINE A. STRAIGHT (State Bar # 119339)
   Email:  cstraight@cas-law.com
7  LAW OFFICE OF CATHERINE ASHLEY STRAIGHT
   1922 21st Street
8  Sacramento, CA  95811
   Telephone:    (916) 443-9400
9  Facsimile:    (916) 444-5441

10

11 Attorneys for Plaintiffs

12              UNITED STATES DISTRICT COURT

13              EASTERN DISTRICT OF CALIFORNIA

14

15 BASALITE CONCRETE PRODUCTS, LLC, a       COMPLAINT FOR VIOLATION OF
   Nevada Limited Liability Company,          STATUTE: CALIFORNIA
                                              FRANCHISE LAW, VIOLATION OF
16                                            FEDERAL PATENT LAW, ETC.;
                Plaintiff,                    DECLARATORY JUDGMENT;
17                                            RESTRAINING ORDERS;
        v.                                    INJUNCTIVE RELIEF; BREACH OF
18                                            CONTRACT, INTERFERENCE, AND
   KEYSTONE RETAINING WALL SYSTEMS,          DECLARATORY RELIEF
   INC, a Minnesota Corporation,
19
                Defendant.                    Demand for Jury Trial
20

21

22        The Plaintiff, BASALITE CONCRETE PRODUCTS, LLC., ("Basalite") by and through

23 its attorneys, for its complaint against the defendant, KEYSTONE RETAINING WALL

24 SYSTEMS, INC., ("Keystone")  alleges:

25                              Introduction

26        1.      Franchisee/Licensee Basalite brings this action against franchisor/licensor

27 Keystone for damages, injunctive and declaratory relief based on breach of contract, tortious

28 interference, and violation of state and federal law causes of action. Basalite manufactures

WAGNER KIRKMAN BLAINE
KLOMPARENS & YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

building products, including retaining wall system blocks.  Keystone franchises/licenses patents for the purpose of manufacturing retaining wall system blocks.

<u>Overview</u>

2.     For over twenty years prior to this action, Keystone and Basalite (or its predecessors) enjoyed a symbiotic licensor-licensee/franchisor-franchisee relationship borne out of various formal written agreements which have expired.  When the last formal written contract expired on or about January 31, 2006, the parties' relationship continued pursuant to an informal license/franchise arrangement, parts of which were oral and parts of which were implemented by the parties' conduct.

3.     In 2008, Basalite demanded a decrease of the royalty rates (the "Original Royalty Rates") Keystone imposed for two reasons:  (i) Basalite's logical belief in the appropriateness of reduced royalties due to the expiration of certain Keystone patents; and (ii) in order for Basalite to remain competitive in a depressed marketplace.

4.     Initially Keystone agreed to Basalite's demand to decrease the royalty rates by offering a sliding scale royalty rate to be applied on a project-by-project basis.  Ultimately, Basalite refused such offer due to the nightmares related to administering such a program.  After some discussion, Basalite proposed a new rate schedule in a letter dated December 3, 2008 (the "New Royalty Rates"), to take effect commencing January 1, 2009.  Pursuant to a verbal agreement, after failing to produce significant per-block savings for Basalite with new patented products, Keystone agreed to the New Royalty Rates.

5.     Due to Keystone's failure to achieve the targeted per-block savings, Basalite commenced payment of, and Keystone accepted without objection, royalty payments which conformed to the New Royalty Rates.  By accepting royalty payments pursuant to the New Royalty Rates without protest for over a year, Basalite logically concluded that Keystone had accepted the New Royalty Rates.  In addition, Keystone reaffirmed its acceptance of the New Royalty Rates several times throughout the 2009 calendar year during meetings among Basalite and Keystone management.

6.     Then, in a letter dated March 2, 2010, Keystone repudiated that new arrangement

WAGNER KIRKMAN BLAINE KLOMPARENS& YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

WAGNER KIRKMAN BLAINE
KLOMPARENS & YOUMANS LLP
Attorneys at Law

10640 Mather Blvd., Suite 200, Mather, California 95655
Phone: (916) 920-5286  Fax: (916) 920-8608

by falsely claiming that it never agreed to the New Royalty Rates, and demanded "arrearages" based on a shortfall calculated using the Original Royalty Rates.  Thereafter, Basalite believed the parties engaged in negotiations targeting, first and foremost, a continuation of their license/franchise relationship.  Basalite further believed that in the event the parties could not agree to continue their license/franchise relationship, the parties intended to design an orderly wind-down of the relationship.

7.    Basalite claims that an orderly wind-down requires good faith cooperation between the parties and a notice period which allows both sides sufficient time to arrange for new license/franchise arrangements.  Basalite claims that given the length of the pre-existing relationship and industry practice, and the difficulty for both sides to obtain and implement new license/franchise relationships, twelve months from the resolution of this claim is the minimum amount of notice that is reasonable under the circumstances.

8.    This wind-down period is necessary for Basalite because a) Basalite continues to vigorously promote Keystone's products to its customers though the present date; b) many of these customers have, as a result of Basalite's efforts, specified Keystone products for their contracts; c) many of these contracts will not be completed for another twelve months or more; and d) it will take Basalite many months to secure a new license/franchise arrangement with another retaining wall product licensor/franchisor, to begin manufacturing that product, and to be in a position to begin filling orders using that new product.  But for Keystone's clandestine conduct in hiding its intentions to terminate Basalite, as detailed hereafter, a similar wind-down period should be necessary to Keystone for many of the same reasons.

9.    Despite the time required for an orderly wind-down of such a long-standing relationship, on or about September 29, 2010, Keystone abruptly attempted to terminate its license/franchise arrangement with Basalite on only thirty days' notice.  Such attempt was in reckless disregard of the fact that Keystone misled Basalite by stating on several occasions, including as recently as June 23, 2010, in writing, that if Keystone's proposal was unacceptable to Basalite, it would work with Basalite to agree upon an orderly wind-down of the business relationship.

10.     The arrangement between Basalite and Keystone constitutes a "franchise" arrangement under the California statutory scheme.  Among other things, this scheme provides that no franchisor may fail to renew a franchise unless it provides its franchisee at least 180 days' prior written notice of its intention not to renew, and good cause or other specified grounds exist (which Basalite denies that good cause or other specified grounds exist).  In the alternative, the scheme also provides that should the parties be unable to agree to the terms of a new agreement, which terms are "customary," and should the franchisor give the franchisee 30 days' written notice to accept the new proposed written agreement or be terminated, then such notice will start the running of the 180 day period.  Because no qualifying notice was provided, and because no good cause or other specified grounds for termination ever existed, Keystone's purported thirty (30) day notice of its intention to terminate the arrangement is void and ineffective.

11.     Basalite now believes and alleges that throughout the period of time Keystone misled Basalite to believe that Keystone had agreed to the New Royalty Rates, and for all periods following March of 2010 when Basalite, in good faith, negotiated toward a continuation of the parties' relationship, Keystone had no actual intention of continuing the relationship.  Rather, Keystone negotiated in bad faith simply buying the time necessary to recruit a substitute licensee/franchisee or manufacturer who would build the product on a "toll" basis, permitting Keystone to abruptly terminate Basalite as a licensee/franchisee thereby preventing Basalite from filling its customers' needs who had specified Keystone products for their construction contracts and providing Keystone an opening to capture that business for itself.

12.     Basalite further alleges that, for quite some time, Keystone inappropriately charged, and continues to inappropriately charge, Basalite royalty payments on certain products for which Keystone's patent rights expired, and that Keystone's activities in this regard violates long-standing federal patent law which has been established by the United States Supreme Court, but of which Basalite was unaware until recently.

13.     Basalite further alleges that Keystone inappropriately charged, and continues to inappropriately charge, Basalite royalty payments on products and/or manufacturing techniques to which Basalite enjoyed joint inventorship status, and that Keystone's activities in this regard

WAGNER KIRKMAN BLAINE KLOMPARENS& YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

1  violates applicable federal patent law, but of which Basalite was previously unaware until

2  recently.

3      14.    Basalite contends that it is entitled to appropriate relief enjoining Keystone from

4  abruptly terminating or refusing to renew its franchise agreements with Basalite; that it is entitled

5  to an order requiring Keystone to disgorge the illegal royalties it has been charging, and that it is

6  entitled to an award of compensatory and punitive damages, according to proof.

7  The Parties

8      15.    Plaintiff Basalite is a Nevada limited liability company with its principal place of

9  business at 605 Industrial Way, Dixon, California 95620. Basalite is in the business of

10  manufacturing building products, including such items as pavers, concrete blocks, and blocks for

11  retaining wall systems such as those which are the subject of the license agreement with

12  Keystone. Basalite manufactures the products which are the subject of the instant

13  license/franchise arrangements out of its plants, which are located in Dixon, California, and

14  Tracy, California; Carson City, Nevada; Boise, Idaho; and Dupont, Washington. Plaintiff is a

15  major supplier of building materials to large retail outlets who resell the products to the general

16  public and to retaining wall contractors or to dealers who resell to them.

17      16.    Defendant Keystone is a Minnesota corporation with its principal place of

18  business at 4444 West 78th Street, Minneapolis, Minnesota 55435.

19  The Formal License/Franchise Agreements

20      17.    The parties entered into various formal written license-franchise agreements

21  whereby Keystone granted Basalite, or its predecessor-in-interest, rights to utilize Keystone's

22  patents and trademarks, to manufacture, market, and sell concrete blocks for retaining wall

23  systems in various portions of California, including areas within this court's jurisdiction, as well

24  as portions of Idaho, Nevada, and Washington. The written agreements between the parties

25  expired on December 31, 2005 and January 31, 2006, respectively.

26  Informal Agreements

27      18.    Thereafter the franchisor continued allowing Basalite to manufacture and market

28  Keystone products pursuant to express and implied oral agreements and conduct whereby

WAGNER KIRKMAN BLAINE KLOMPARENS& YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California 95655
Phone: (916) 920-5286 Fax: (916) 920-8608

1   Basalite continued manufacturing Keystone-licensed products and paying royalty payments in

2   accordance with the Original Royalty Rates that Keystone accepted.

3                                  Modification of Royalty Schedule

4        19.   By mid-2008, certain previously expired Keystone patents, the deteriorating

5   economy and fierce competition from other retaining wall product manufacturers, made it

6   necessary and appropriate for Basalite to demand a modification of the Original Royalty Rates.

7   In August, 2008, Keystone acknowledged the expired patents and the challenging market

8   conditions and proposed a sliding royalty scale to be applied on a project-by-project basis.

9   While Basalite initially agreed to consider such proposal, its Chief Financial Officer quickly

10  recognized the administrative nightmare caused by such sliding royalty scale.  As a result,

11  Basalite rejected the sliding royalty scale less than two weeks after it was proposed.

12       20.   After protracted discussions, Basalite issued a letter dated December 3, 2008 to

13  Keystone which proposed future "Recommended Royalty" rates (previously defined as the "New

14  Royalty Rates") which were specified in the letter in lieu of the existing "Current Royalty" rates

15  (previously defined as the "Original Royalty Rates").  A copy of this letter is attached as Exhibit

16  A.  This letter stated that Basalite required a final agreement in place by January 1, 2009.

17       21.   At an early January 2009 meeting, in an attempt to salvage the Old Royalty Rates,

18  Keystone posited that Basalite would enjoy per product cost savings by using a certain new

19  Keystone patented product configuration.  In such verbal proposal, Keystone agreed that if it was

20  unable to save Basalite an agreed upon amount in manufacturing costs per block, then Keystone

21  would accept the New Royalty Rates effective January 1, 2009.  The parties subsequently

22  determined that Keystone's new patented product configuration would not save Basalite the

23  requisite amount in manufacturing costs, therefore the new patented product configuration was

24  not used and the New Royalty Rates would remain in effect.

25       22.   Thereafter, until June of 2009, Basalite paid, and Keystone accepted, without

26  protest, the royalty payments calculated at the New Royalty Rates.  Then, in June of 2009,

27  certain Keystone representatives communicated to Basalite that Keystone believed that Basalite

28  reneged on its agreement to purchase the new molds which would implement Keystone's new

WAGNER KIRKMAN BLAINE
KLOMPARENS & YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
Attorneys at Law

10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8008

patented product configuration. This caused Basalite management to request a meeting with Keystone management to clarify any and all misunderstandings.  At a June 26, 2009 meeting among Basalite and Keystone management, Keystone reconfirmed that because the threshold savings never materialized, the New Royalty Rate schedule would remain in place.

23.     In reliance on Keystone's representations, apparent agreement, and conduct, Basalite continued manufacturing and promoting Keystone products to its customers, it continued paying royalties to Keystone in accordance with the New Royalty Rates and Keystone continued accepting such royalty payments without protest.  Keystone's aforementioned conduct reconfirmed that Basalite's proposal set forth in its December 3, 2008 letter had been accepted by Keystone.

24.     In October of 2009, Keystone's accounting department notified Basalite that Basalite had short-paid its royalty payments.  Basalite was in fact current based on the New Royalty Rates.   When Basalite management contacted Keystone management about this assertion by Keystone's accounting department, Keystone's management stated that he would look into the matter and get back to Basalite.  Keystone never responded to this event, but rather, continued accepting Basalite's payments of royalty payments in accordance with the New Royalty Rates.   During this sequence of events, Keystone management never indicated to Basalite management that the New Royalty Rates were unacceptable.

25.     Then, on or about March 2, 2010, Keystone sent Basalite a letter wherein Keystone repudiated the existing modified royalty payment agreement by falsely claiming that it never accepted the New Royalty Rates.  Keystone claimed rather that it never accepted any rates which differed from the Original Royalty Rates, and demanded that Basalite pay arrearages dating back to January 1, 2009 based on the difference between the Original Royalty Rates and the New Royalty Rates.

26.     During the period on or about January 2010 to August 2010, Basalite negotiated with Keystone to, first and foremost, salvage their long-standing relationship, or in the alternative, if the parties were unsuccessful on agreeing to a new arrangement, to come to terms allowing for an orderly wind-down of the arrangement which would allow both sides to find and

1   establish satisfactory arrangements with alternative licensors/franchisors or licensees/franchisees.

2   During the entire period between January 2010 until the present, Basalite vigorously promoted,

3   and continues to vigorously promote, Keystone's products and to negotiate in good faith with

4   Keystone.

5       27.     In August of 2010, Basalite management and Keystone management met and

6   preliminarily agreed to wind-down the relationship in a fashion which would give all parties

7   adequate time to make new arrangements.  At that time, Keystone requested a written proposal

8   from Basalite on an orderly wind-down.     Ultimately, Basalite delivered such proposal but

9   received no response.

10      28.     Instead, on or about September 29, 2010 Keystone forwarded its letter of that date

11  in which it announced that it was abruptly terminating all of the license agreements between the

12  companies effective in thirty days, or October 29, 2010.  The letter further directed Basalite to

13  cease and desist from using any of Keystone's Know-How, Molds, Patent Rights, and

14  Trademarks to manufacture, market or sell any of its products as of the termination date.  This

15  letter further demanded that Basalite return all materials and documents upon which the

16  trademarks appear, and that Basalite must dispose of all molds, within thirty days.

17      29.     While Basalite is in agreement that the relationship with Keystone should

18  eventually be terminated, Basalite asserts that for the reasons specified hereafter, it is entitled to

19  reasonable time and conditions for the winding-down period, and that Keystone should not be

20  allowed to terminate or refuse to renew the agreement upon less than twelve months notice.

Jurisdiction and Venue

21

22      30.     The United States District Court, Eastern District of California is a court of

23  competent jurisdiction located in Sacramento, California.

24      31.     Defendant Keystone does business in the State of California.

25      32.     This Court has subject matter jurisdiction based on diversity of citizenship

26  pursuant to 28 U.S.C. Section 1332 (a).  The Plaintiff Basalite is a citizen of the state of Nevada.

27  The Defendant Keystone is a citizen of the state of Minnesota.  The amount in controversy

28  exceeds Seventy Five Thousand Dollars ($75,000.00).

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

33.     Venue is proper in this district pursuant to 28 U.S.C. Section 1391(a). Jurisdiction is founded on diversity of citizenship, a substantial part of the events or omissions giving rise to the claim occurred in this district, as Plaintiff's plant where it manufactures the licensed product is located within this jurisdiction and Defendant is subject to personal jurisdiction in this district based on the fact that it is doing business in this state.

<u>Plaintiff's Need for Reasonable Time to Wind Down</u>

34.     Basalite maintained a licensor-licensee/franchisor-franchisee relationship with Keystone for over twenty years.  Basalite faithfully performed its duties under the various agreements with Keystone over the years.  This includes but is not limited to the fact that Basalite vigorously promoted the Keystone products over the years; it consistently ranked as one of Keystone's top franchisees/licensees; it paid Keystone many millions in royalties over the last several years; and despite facing problems with many Keystone products or designs, Basalite operated in good faith and worked through most of the problems encountered.  However, the recent downturn in the economy made it difficult for Basalite to continue to compete with Keystone's competitors in the industry at the Original Royalty Rates.  Keystone surreptitiously led Basalite to believe that Keystone accepted Basalite's December 3, 2008 proposal for a modified fee structure, then waited more than a year to reveal its assertion that it never accepted the New Royalty Rates.  Thereafter, Keystone falsely projected as if it were attempting to negotiate a continuing relationship or orderly wind-down.

35.     Now, Keystone wants to abruptly terminate the relationship, and is attempting to require Basalite to refrain from manufacturing any additional product.  Such an abrupt termination of Basalite's rights to continue manufacturing sufficient product to fill its commitments to its customers, or its customers' commitments to their customers wherein they have specified Keystone products will cause Basalite irreparable harm.  Basalite has a large group of customers which it carefully cultivated over twenty years of its existence.  These are Basalite customers developed solely by Basalite without any assistance from Keystone.  It will take a transition period of at least twelve months for Basalite to obtain a license/franchise arrangement with another retaining wall product licensor, and then to begin offering its

WAGNER KIRKMAN BLAINE KLOMPARENS& YOUMANS LLP
*Attorneys at Law*
10640 Mather Blvd., Suite 200, Mather, California 95655
Phone: (916) 920-5286  Fax: (916) 920-8608

1  customers an alternative.

2  ## First Claim for Relief

3  ### Violation of Statute: California State Franchise Law

4     36.   Basalite incorporates by reference paragraphs 1- 35 of this complaint.

5     37.   The arrangement between Keystone and Basalite whereby Keystone granted

6  licenses to Basalite to manufacture, market and sell Keystone-licensed products within California

7  constituted franchise agreements as that term is defined under California law, including but not

8  limited to California Business and Professions Code section 20001.  This section states that a

9  franchise means a contract or agreement, either express or implied, whether oral or written,

10  between two or more persons by which (a) a franchisee is granted the right to engage in the

11  business of offering, selling or distributing goods or services under a marketing plan or system

12  prescribed in substantial part by a franchisor and (b) the operation of the franchisee's business

13  pursuant to that plan or system is substantially associated with the franchisor's trademark,

14  service mark, trade name, logotype, advertising or other commercial symbol designating the

15  franchisor or its affiliate and (c) the franchisee is required to pay, directly or indirectly, a

16  franchise fee.

17     38.   The California statutory scheme provides that no franchisor may terminate a

18  franchise prior to the expiration of its term except for good cause, which never existed in this

19  case.  Basalite alleges that in the absence of good cause for termination, the arrangement

20  between the parties is subject to California Business and Professions Code section 20025, which

21  provides that no franchisor may fail to renew a franchise unless such franchisor provides the

22  franchisee with at least 180 days prior written notice of its intention not to renew, and providing

23  that it meets certain additional criteria specified in Section 20025.  While Keystone will claim

24  that it was entitled to refuse to renew because Basalite failed to pay royalties in accordance with

25  the Original Royalty Rates, this claim is denied by Basalite, who asserts, as detailed above, that

26  the Original Royalty Rates were modified when Keystone by its conduct and words accepted the

27  New Royalty Rates as outlined in Basalite's December 3, 2008 letter.

28     39.   Basalite alleges that Keystone violated the California statutory scheme by

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

1   providing only 30 days' notice of its intent to terminate and to not renew Basalite's license to

2   manufacture, market and sell Keystone-licensed product.    As a result, Basalite has been

3   damaged in a sum in excess of the jurisdictional minimum of this Court, according to proof.

4       40.   Basalite alleges that in the course of committing the aforementioned acts

5   Keystone acted in bad faith and with a conscious disregard for the rights of its franchisee, and

6   that Basalite is therefore entitled to an award of exemplary and punitive damages.

7   Second Claim for Relief

8   Violation of Federal Patent Law Prohibiting Royalty Charges After Expiration of Patent

9       41.   Plaintiff incorporates by reference paragraphs 1-40 of this complaint.

10       42.   Defendant Keystone claims patent rights under various patents based upon

11   assignments or licenses to Keystone (the "Keystone Patents").   As discussed above, Keystone

12   and Basalite entered into various agreements under which Basalite licensed rights to the

13   Keystone Patents and paid patent royalties to Keystone.

14       43.   The laws of the United States as interpreted by the United States Supreme Court

15   make it unlawful per se for a holder of a patent to attempt to continue charging patent royalties

16   beyond the date of the expiration of the patent.  Plaintiff became aware of this fact only recently.

17       44.   Defendant Keystone continued charging Basalite royalties, and has continued to

18   demand patent royalties, for products previously covered by certain of the Keystone Patents, but

19   which patents have expired.  Plaintiff is informed and believes and on that basis herein alleges

20   that such include, but are not limited to, royalties for the products commonly known as Standard

21   Unit, Compac Unit, Intermediate, Legacy, Gardenwall, Sedona, and all products designated as

22   Softsplit.  Royalties have been charged and/or demanded by Keystone after the expiration dates

23   of the following patents:

24       Patent No. D380,560, expired November 8, 2002;

25       Patent No. 4,802,230 reissued as No. RE37,278, expired September 15, 2006;

26       Patent No. 4,825,619 reissued as No. RE34,314, expired September 15, 2006;

27       Patent No. 5,827,015, expired September 27, 2009;

28       Patent No. 5,078,940, expired June 8, 2010; and

WAGNER KIRKMAN BLAINE
KLOMPARENS & YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California 95655
Phone: (916) 920-5286  Fax: (916) 920-8608

Patent No. 5,217,630, expired June 8, 2010.

45.    Accordingly, Plaintiff Basalite is entitled to disgorgement of overcharged royalties in an amount which has not yet been definitely ascertained, according to proof.

<u>Third Claim for Relief</u>

<u>Violation of Federal Patent Law Prohibiting Royalty Charges Against Co-Inventor</u>

46.    Plaintiff incorporates by reference paragraphs 1-45 of this complaint.

47.    At numerous times during the period Basalite has functioned as Keystone's franchisee/licensee, Basalite or its predecessor has contributed to the conception of certain inventions involving products, processes, molds, relating to the design, manufacture, and/or installation of the product such that Basalite or its employees qualified as co-inventors of the products, processes, molds, designs, manufacturing techniques, or installation techniques. Nevertheless, Keystone charged or continued charging Basalite or its predecessor royalties for the exploitation of such products, processes, molds, designs, and the like to which Basalite had and has a valid and rightful claim to patent rights therein.

48.    The patents laws provide that each owner of a patent has the right to make, use, and sell the patented invention without the consent of and without accounting to any other owner of the patent.  Accordingly, the laws of the United States make it unlawful for Keystone as the holder of a patent to charge Basalite a patent royalty where Basalite or its employees were a co-inventor of a patented product, apparatus, process or design.  Plaintiff became aware of this fact only recently.

49.    While further investigation is required for Plaintiff to be able to plead specifics, Plaintiff is informed and believes and on that basis herein alleges that defendant Keystone has charged or continued charging Plaintiff royalties when it should not have because Basalite is a rightful owner of certain of Keystone's patented or to be patented products or processes. Basalite will amend this complaint to list these products or processes when ascertained.

50.    Accordingly, Plaintiff Basalite is entitled to disgorgement of overcharged royalties in an amount which has not been definitely ascertained, according to proof.

/ / /

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
*Attorneys at Law*
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

<u>Fourth Claim for Relief</u>

<u>Declaratory Judgment That Certain Of Keystone's Patents Are Invalid</u>

<u>And/Or Require Correction To Name Omitted Joint Inventor</u>

51.     Plaintiff incorporates by reference paragraphs 1-50 of this complaint.

52.     As indicated above, Defendant Keystone is the owner of several patents which Defendant claims covered the products made by Plaintiff Basalite as Keystone's licensee. Keystone has demanded that Basalite cease and desist from using the Keystone Patents as of October 29, 2010.  Keystone's cease and desist demand implies a threat to institute an action against Plaintiff for patent infringement.

53.     Further, Keystone continues to demand patent royalties, which Keystone claims are unpaid, respecting products manufactured and sold by Basalite.  Basalite avers that it is not liable for past or future patent royalty payments on products and processes covered by certain of the Keystone Patents as such patents are invalid.

54.     Plaintiff is informed and believes that certain of Keystone Patents are invalid and void for one or more of the following reasons: invalidity of the patent under 35 United States Code sections 102, 103, and/or 112; the applicant for the patent did not himself invent the subject matter sought to be patented; and/or applicant committed fraud on the Patent Office in connection with the patent application, by failing to properly name the inventors of the subject matter sought to be patented.

55.     As set forth above, Basalite or its predecessors have contributed to the conception of certain inventions involving products, processes, molds, relating to the design, manufacture, and/or installation of the product such that Basalite or its employees qualified as co-inventors of the products, processes, molds, designs, manufacturing techniques, or installation techniques. Plaintiff is informed and believes and thereon alleges that Keystone applied for patents of the products, process, or component thereof without naming the Basalite employees as joint inventors in violation of 35 United States Code section 116 which states in applicable part: "When and invention is made by two or more persons jointly, they shall apply for patent jointly...."

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
*Attorneys at Law*
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

56. Under federal patent law, Basalite is entitled to a declaration from this Court that one or more of the Keystone Patents and/or pending patent applications be corrected to name an omitted Basalite joint inventor. In the alternative, Basalite is entitled to a declaration that such patents be declared invalid due to Keystone's failure to name a joint inventor.

57. Plaintiff Basalite is entitled to disgorgement of royalties paid respecting any patent ultimately found to be invalid in an amount which has not been definitely ascertained.

58. Plaintiff will amend this complaint to include the specifics of all products, process, or components to which this request for relief applies as soon as it is ascertained.

Fifth Claim for Relief

Restraining Orders; Injunctive Relief

59. Basalite incorporates by reference paragraphs 1-58 of this complaint.

60. Unless restrained from enforcing Keystone's thirty day notice of termination and non-renewal of the parties' long-standing franchise arrangement, Basalite will be irreparably harmed. This is because Basalite faithfully performed its obligation to vigorously promote Keystone's products with Basalite's customer base up to the present day. Due to Basalite's efforts in promoting the Keystone brand name, numerous Basalite customers, which include many contractors, have specified Keystone brand products for contracts which will not be completed for another twelve months or more. As a result, Basalite is obligated to manufacture Keystone-franchised product until its customers' needs for the specific Keystone-franchised product are fulfilled, expired or otherwise completed, and until such time as Basalite has had an adequate opportunity to find another licensor/franchisor and arrange to manufacture retaining wall products which do not infringe upon Keystone's lawful patents. This will likely take at least another twelve months to accomplish.

61. Basalite manufactures the product using molds that must be licensed/franchised by a new licensor/franchisor. Through the use of these molds in conjunction with Basalite's specialized machinery, Basalite may manufacture the retaining wall blocks in large quantities, however, it generally takes at least ninety days from the time the molds are ordered before they are even shipped from the mold manufacturer. It necessarily takes a minimum of about one

WAGNER KIRKMAN BLAINE
KLOMPARENS & YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California 95655
Phone: (916) 920-5286 Fax: (916) 920-8608

1   hundred twenty days from the date a mold is ordered to be in a position to produce sufficient

2   quantities of product to fill orders.

3       62.    Basalite is informed and believes and thereon alleges that Keystone deliberately

4   provided Basalite with only thirty days' notice of its intent not to renew, and of its demand that

5   Basalite destroy its Keystone-franchised molds no later than thirty days from notice, and that

6   Basalite abruptly cease manufacturing Keystone-franchised products, even those which Basalite

7   has already manufactured, within thirty days so that Keystone could prevent Basalite from filling

8   the needs of its customers who were locked into using Keystone-franchised products because of

9   commitments they had made to their own customers, so that Keystone would then be in a

10   position to appropriate Basalite's customer base for its own account.

11       63.    Basalite alleges that it is virtually impossible for Keystone to so quickly fill the

12   customers' needs located within Basalite's exclusive franchise territory unless Keystone has

13   already lined up another licensee/franchisee to manufacture the Keystone-franchised product;

14   that Keystone's conduct demonstrates that it has already lined up another licensee/franchisee to

15   begin manufacturing Keystone-franchised product in Basalite's exclusive territory; that it did so

16   while it was still involved in a franchise arrangement with Basalite; that its actions in lining up

17   other licensees/franchisees while still involved in a franchise arrangement with Basalite

18   constituted a severe breach of its duties under that arrangement; that while pretending to

19   negotiate with Basalite for a continuation of its franchise relationship, Keystone was actually

20   failing to disclose its true intent, namely that it already decided to terminate the relationship, and

21   that it was already pursuing a substitute licensee/franchisee.

22       64.    Basalite requests that the Court issue temporary restraining orders and preliminary

23   injunctions which restrain Keystone from terminating or refusing to renew its license

24   arrangement with Basalite in less than 180 days from the date of the Court's order.

25   <u>Fifth Claim for Relief</u>

26   <u>Breach of Contract</u>

27       65.    Basalite incorporates by reference paragraphs 1-64 of this complaint.

28       66.    Basalite alleges that by Keystone's conduct in accepting the royalty payments

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
*Attorneys at Law*
10640 Mather Blvd., Suite 200, Mather, California 95655
Phone: (916) 920-5286 Fax: (916) 920-8608

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
Attorneys at Law

10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

1 | calculated pursuant to the New Royalty Rates without protest, and that by Keystone's subsequent

2 | actions in confirming that Keystone was in agreement with the New Royalty Rates, a contract for

3 | the payment of royalties in accordance with the new schedule was formed.  This contract was a

4 | franchise agreement as defined under the California statutory scheme.  While the contract did not

5 | specify a term, it ran for a reasonable period and because it was subject to the California

6 | statutory scheme, it could not be terminated without notice except for good cause, which did not

7 | exist, and Keystone could not refuse to renew the contract except by giving at least 180 days'

8 | notice, subject to further requirements dictated by the statute, which have not been met.

9 | 67. By issuing its September 29, 2010 letter attempting to terminate the franchise

10 | agreement and demanding that Basalite cease and desist manufacturing, marketing or selling, or

11 | using any of Keystone's products, processes, knowledge or marks and that Basalite destroy all

12 | molds in Basalite's possession, Keystone breached its agreement with Basalite, all to Basalite's

13 | damages according to proof.

14 | 68. As licensor/franchisor Keystone has at all times during the license/franchise

15 | arrangements owed its licensee/franchisee an obligation to provide rights to use Keystone's so-

16 | called Know-How, Molds, Patent Rights, and Trademarks for product lines which had been tried

17 | and tested by Keystone so that its franchisee could expect to commence manufacturing

18 | Keystone-franchised products without having to experience untoward difficulty in commencing

19 | the manufacturing process.  "Know-How" as used by the parties in their expired written and

20 | informal agreements and in the industry generally means technical data, trade secrets, designs,

21 | plans, specifications, methods, processes, systems, manufacturing and installation procedures,

22 | marketing strategies relating to the molds or product owned or controlled by the licensor.

23 | "Molds" mean the form or molds designed by the licensor for using in the manufacturing of the

24 | product.  "Patent Rights" generally refer to United States patents owned or controlled by the

25 | licensor.

26 | 69. On many occasions over the past several years, Keystone has provided Basalite

27 | with additional licenses/franchises to use Know-How, Molds, or Patent Rights to new products

28 | which Keystone purportedly developed and, pursuant to Basalite's exclusive territorial marketing

1  agreements, Keystone was obligated to offer to Basalite.  However, rather than providing

2  Basalite with thoroughly tested new products or Know-How, Molds, or Patent Rights related to

3  those products, Keystone has asked Basalite to begin manufacturing new products which were

4  apparently improperly or inadequately tested or engineered, all to Basalite's substantial

5  detriment, as more particularly stated hereafter.

6       70.     Basalite experienced great difficulty attempting to get Keystone's new product

7  called "1.33 Elite" into production.  Basalite received Keystone's mold for this product in July of

8  2006 after inordinate delays.  On attempting to place the mold into production, Basalite

9  discovered that the mold was defectively designed, including face place heaters which

10  continually broke down, problems with the design of the embossing face plates which left an

11  unsightly ridge of material along the bottom of the block, as well as other problems. While these

12  problems were solved with great effort and expense on Basalite's part, other problems developed.

13  It was eventually determined that a new corner mold product was required because Keystone's

14  recommended 45 degree field cut method was proving unworkable for installers.  Ultimately,

15  Keystone eventually recalled its 1.33 Elite block due to excessive cracking.  Keystone advised

16  that a new mold was required, and delivery of that mold was promised for no later than the

17  spring of 2007.   Keystone promised delivery of the new corner mold by November of 2006.

18  The corner mold was not made available until January of 2008, and the base mold was not made

19  available until thereafter at an additional cost of One Hundred Thousand Dollars ($100,000) to

20  Basalite.  The failure of Keystone to properly design and test this product has caused Basalite

21  substantial damages in an amount which has not been precisely ascertained, according to proof.

22       71.     During the period August to December of 2009, Basalite attempted to begin

23  manufacturing yet another new Keystone retaining wall product called "Insignia."   In reliance on

24  representations by Keystone to Basalite (i) concerning this product; and (ii) the ability of Basalite

25  to manufacture the product using its existing machinery, Basalite incurred substantial costs

26  ordering the mold for the product, and Basalite made commitments to several of its important

27  customers in respect to the availability of this product.  In the meantime, the parties were

28  attempting to work out their differences and see whether they could come to a new licensing

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

{12342.00200 / 00522011.DOC.2}                    17

agreement.  On or about February 23, 2010 Basalite received the new mold for the new Insignia product.  This mold was manufactured according to drawings and specifications provided by Keystone to the mold manufacturer.  During the period February 23, 2010 to the end of the month, Basalite struggled to make the mold function properly, and repeatedly requested assistance from Keystone.  However, Keystone failed to provide proper support, and even with the assistance of Basalite's Besser machine manufacturer's best expert who traveled to Basalite's manufacturing plant in Dixon, California, Basalite could not produce acceptable product from the mold.  It was eventually determined that this mold could not be made to function on Basalite's machinery, because the mold did not meet the specifications of the machine it was made for, and that Keystone's representations that it had been tested with the same machine elsewhere turned out to be false.  This entire episode caused damage to Basalite and its reputation which is that it has great expertise in the area, and can fill its contracts to its suppliers on time.  This episode was a source of great embarrassment to Basalite and its reputation because one of its major customers had placed newspaper ads offering this product for sale by certain dates which Basalite was unable to fill.

72.    As a result Basalite has been greatly damaged.  Basalite has been forced to use a mold which manufactures only three blocks at a time rather than five.  The machine which can operate a three-at-a-time block mold is located in Selma, California, which is a great distance from the market area (and the Dixon manufacturing facility) where the blocks are distributed, and the material costs are greater with a three-at-a-time block machine rather than a five-at-a-time block machine.  As a result, Basalite is currently manufacturing this product at a loss. Basalite has suffered damages in an amount that will be proved at trial.

Sixth Claim for Relief

Interference

73.    Basalite incorporates by reference paragraph 1-72 of this complaint.

74.    Basalite has a large base of customers in both retail and commercial markets, "retail" meaning building supply stores which sell building products to the public at large, and "commercial" meaning contractors who order building supplies directly from Basalite to use in

WAGNER KIRKMAN BLAINE KLOMPARENS& YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608

performing construction contacts which they have negotiated, and to dealers who require the product in order to meet their customers' expectations. For many years, throughout the life of the franchise arrangements which Basalite has had with Keystone, including right up until the present, Basalite has faithfully and vigorously promoted the Keystone product to its entire customer base. As a result of Basalite's efforts, most of Basalite's customer base is accustomed to using Keystone product and a great many of Basalite's commercial customers have already specified Keystone products for their jobs which will not be completed for many months into the future.

75.   Basalite is informed and believes and thereon alleges that Keystone formed an intention to terminate its franchise relationship with Basalite many months ago, but that it did not disclose its true intent to Basalite. Instead it misled Basalite to believe that Keystone was negotiating in good faith in an effort to resolve its differences with Basalite, and that if the parties were unable to come to a new arrangement which was satisfactory to both parties that they would agree to an orderly wind-down procedure which would give both sides adequate opportunity to gear up with a new licensor/franchisor or licensee/franchisee so that neither side would be damaged. Instead, Basalite alleges, Keystone formed the intent to terminate the relationship many months ago, and it secured a new licensee/franchisee who could immediately upon termination of Basalite's franchise agreement begin supplying Basalite's customers with Keystone product. Basalite alleges that Keystone did this specifically so that it could capture a large share of Basalite's customer base who would be locked into supplying Keystone product to fill its customers' needs.

76.   By these actions Keystone is knowingly and intentionally attempting to interfere with Basalite's current and prospective advantageous business relationships with its customers. These actions have caused and will cause Basalite extensive damages according to proof.

77.   By these actions Keystone has acted with intent to harm Basalite or at least it has acted in conscious disregard for the rights of Basalite. Therefore Basalite is entitled to exemplary and punitive damages against Keystone.

/ / /

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
Attorneys at Law
10640 Mather Blvd., Suite 200, Mather, California 95655
Phone: (916) 920-5286 Fax: (916) 920-8608

WAGNER KIRKMAN BLAINE
KLOMPARENS & YOUMANS LLP
Attorneys at Law

10640 Mather Blvd., Suite 200, Mather, California 95655
Phone: (916) 920-5286   Fax: (916) 920-8608

## Seventh Claim for Relief

### Declaratory Relief

78.     Basalite incorporates by reference paragraphs 1-77 of this complaint.

79.     Basalite asserts that it is entitled to a declaration that California franchise law applies to the instant arrangement; that Keystone violated the California statutory scheme by attempting to terminate the franchise arrangement on 30 days' notice without cause; that Basalite was entitled to no less than 180 days under the statute; that Keystone's September 29, 2010 notice is void and of no effect; that under the circumstances given the length of time the franchise relationship has existed, and given that the parties always contemplated that Keystone would be required to allow Basalite the opportunity to renew the agreement and that such agreement would not be unreasonably withheld, that Basalite is entitled to no less than 12 months' notice of intent not to renew.

WHEREFORE, Plaintiff Basalite prays for judgment as follows:

1.     For compensatory damages according to proof;

2.     For punitive damages where appropriate;

3.     For declaratory relief which the Court deems appropriate, including but not limited to the Court's declaration that: the arrangement between the parties is a franchise arrangement which is subject to the State of California franchise statutory scheme; that the purported 30 days notice of termination issued by Keystone is void and of no effect under that scheme; that under the California statute Basalite is entitled to no less than 180 days notice of Keystone's intent not to renew the franchise agreement; that under the circumstances Basalite is entitled to no less than 12 months notice of termination;

4.     For a finding that defendant Keystone has illegally charged Basalite royalties for patents or patent rights after the patent rights expired, and an order requiring Keystone to disgorge and pay over to Basalite all such illegally charged royalties;

5.     For a finding that Basalite is a co-inventor of certain products, procedures, designs or other claims for which Keystone illegally charged Basalite, and for an order requiring Keystone to disgorge and  pay over to Basalite all such illegally charged royalties;

6.      For a finding that certain of Keystone's patents or claims are invalid and or require correction to name omitted joint inventors, and for an order requiring Keystone to disgorge and pay over to Basalite any royalties for which Keystone has illegally charged Basalite for this reason;

7.      For injunctive relief including appropriate temporary restraining orders, if applied for, and for preliminary and permanent injunctions enjoining Keystone from attempting to terminate its franchise arrangement with Basalite on insufficient notice which does not comply with the California statutory scheme, or from refusing to renew the franchise arrangement without providing the notice required under the California statutory scheme.

8.      For costs of suit and attorney fees where appropriate;

9.      For such other and further relief as the Court deems appropriate.


DATED:  October 18, 2010                    WAGNER KIRKMAN BLAINE
                                            KLOMPARENS & YOUMANS LLP


                                            By:    /s/ Douglas E. Kirkman
                                                 DOUGLAS E. KIRKMA
                                            Attorneys for Plaintiff

WAGNER KIRKMAN BLAINE
KLOMPARENS& YOUMANS LLP
Attorneys at Law

10640 Mather Blvd., Suite 200, Mather, California  95655
Phone: (916) 920-5286  Fax: (916) 920-8608